## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 04 B 05055 |
| | ) | Chapter 7 |
| OSCAR ZAMUDIO, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| | ) | |
| RAYMOND ELLIOTT, | ) | Adv. No. 04 A 02922 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OSCAR ZAMUDIO, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This matter comes before the Court on the motion of debtor Oscar Zamudio (the

"Debtor") for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056

and Federal Rule of Civil Procedure 56 on the complaint filed by plaintiff Raymond Elliott

(the "Plaintiff"), which objects to the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)

and (a)(5).[1] For the reasons stated herein, the Court grants the Debtor's motion for summary

---

[1] The Plaintiff's complaint, originally filed on June 1, 2004, sought to except the debt
from discharge pursuant to 11 U.S.C. §§ 523(a)(5) and (a)(15); the Plaintiff's objection to
discharge under §§ 727(a)(2) and (a)(5) was designated "an alternative cause of action."
Compl. at ¶ 1. The complaint initially contained five counts. Counts I and II objected to the
discharge pursuant to §§ 727(a)(2) and (a)(5) respectively. Counts III and IV sought to have
the transfer of the Debtor's real property deemed void under 11 U.S.C. § 548 and 740 ILCS
160/1 *et seq.* respectively. Finally, Count V requested an order awarding the Plaintiff
attorney's fees in bringing the action pursuant to the Court's equitable powers under 11
U.S.C. § 105. On December 10, 2004, the Court entered an order dismissing without
prejudice Counts III, IV, and V of the complaint. Therefore, only Counts I and II remain,

-2-

judgment on both Counts I and II and dismisses the Plaintiff's complaint.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(H), (I), and (J).

## II. APPLICABLE STANDARDS

### A.    Summary Judgment

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). *See also Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1019 (7th Cir. 2003). Rule 56(b) allows a party defending a claim to move for summary judgment at any time. Fed. R. Civ. P. 56(b).

---

neither of which discusses or makes reference to § 523(a)(5) or § 523(a)(15). Accordingly, this Opinion is limited to the issue of the Debtor's discharge pursuant to §§ 727(a)(2) and (a)(5).

The primary purpose of granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmen's Fed. Savs. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998). On a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (internal quotation omitted).

In 1986, the United States Supreme Court decided a trilogy of cases which encourages the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322; *Matsushita*, 475 U.S. at 585-86.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248; *Frey v. Fraser Yachts*, 29 F.3d 1153, 1156 (7th Cir. 1994). "[S]ummary

·4·

judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990). The Seventh Circuit has noted that trial courts must remain sensitive to fact issues where they are actually demonstrated to warrant denial of summary judgment. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1065-66 (7th Cir. 2000); *Szymanski v. Rite-Way Lawn Maint. Co.*, 231 F.3d 360, 364 (7th Cir. 2000).

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 323; *Matsushita*, 475 U.S. at 587; *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir. 1990). The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production either by submitting affirmative evidence that negates an essential element of the non-moving party's claim or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *See Union Nat'l Bank of Marseilles v. Leigh (In re Leigh)*, 165 B.R. 203, 213 (Bankr. N.D. Ill. 1993).

-5-

In the matter at bar, the Plaintiff has the burden of proof at trial. *See* Fed. R. Bankr. P. 4005. Thus, the movant Debtor can either submit evidence negating an essential element of the respondent Plaintiff's claim or demonstrate that the Plaintiff's evidence is insufficient on an essential element.

Local Bankruptcy Rule 7056-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois, which deals with summary judgment motions, was modeled after LR56.1 of the Local Rules of the United States District Court for the Northern District of Illinois. Hence, the case law construing LR56.1 and its predecessor Local Rule 12 applies to Local Bankruptcy Rule 7056-1.

Pursuant to Local Bankruptcy Rule 7056, a motion for summary judgment imposes special procedural burdens on the parties. Specifically, the Rule requires the moving party to supplement its motion and supporting memorandum with a statement of undisputed material facts ("7056-1 statement"). The 7056-1 statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 7056-1B.

The party opposing a summary judgment motion is required by Local Rule 7056-2 to respond ("7056-2 statement") to the movant's 7056-1 statement, paragraph by paragraph, and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 7056-2. The opposing party is required to respond "to each numbered paragraph in the moving

-6-

party's statement" and to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" Local Bankr.R. 7056-2A(2)(a). Most importantly, "[a]ll material facts set forth in the [7056-1] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 7056-2B.

The Seventh Circuit has upheld strict application of local rules regarding motions for summary judgment. *See Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1140 (7th Cir. 1997); *Feliberty v. Kemper Corp.*, 98 F.3d 274, 277-78 (7th Cir. 1996); *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 938 (7th Cir.), *cert. denied*, 510 U.S. 916 (1993); *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir. 1992); *Maksym v. Loesch*, 937 F.2d 1237, 1240-41 (7th Cir. 1991). Compliance with Local Rules 7056-1 and 7056-2 is not a mere technicality. Courts rely greatly upon the information presented in these statements in separating the facts about which there is a genuine dispute from those about which there is none. *Am. Ins. Co. v. Meyer Steel Drum, Inc.*, No. 88 C 0005, 1990 WL 92882, at *7 (N.D. Ill. June 27, 1990). The statements required by Rule 7056 are not merely superfluous abstracts of evidence. Rather, they "are intended to alert the court to precisely what factual questions are in dispute and point the court to specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information on its own." *Waldridge v. Am Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

-7-

In the instant case, the Debtor filed a 7056-1 statement that fully complies with the Local Rule. It includes numbered paragraphs establishing undisputed facts with specific references to accompanying exhibits, as well as the Debtor's own affidavit and the affidavit of Becky Dahlgren ("Dahlgren"), the attorney who represented him in a marital dissolution from his former spouse Cynthia Zamudio.

In stark contrast, the Plaintiff has wholly failed to comply with the Rule. He has not responded to each numbered paragraph in the Debtor's 7056-1 statement, nor has he timely filed any document even remotely resembling a 7056-2 statement, in form or in substance, as required by the Local Rule. Rather, the Plaintiff has filed only a memorandum in response to the Debtor's motion. Under a subheading entitled "Statement of Disputed Facts," he simply and summarily notes as follows: "Plaintiff hereby references the Statement of Facts referenced by Defendant as if fully set forth herein. However, [Plaintiff] denies that such facts are undisputed and maintains that several questions of fact remain." Response at 2. The Plaintiff then proceeds to set out seven of these purportedly disputed facts, most of which are conclusory, irrelevant, or uncontested, and none of which includes specific references to any part of the record or to any supporting materials relied upon to bolster the facts.

The Plaintiff's blanket denial is entirely insufficient for compliance with Rule 7056 and does not serve the purpose of framing the pleadings at bar or making specific references to those parts of the record on which the party opposing the summary judgment relies to show a material factual dispute. *See Davis v. Ill. State Police Fed. Credit Union (In re Davis)*, 244 B.R. 776, 782 (Bankr. N.D. Ill. 2000). The Court is not obliged to sift through

the record to ferret out those parts relied upon by the Plaintiff in opposition to the motion for summary judgment. *Id.* Because the Plaintiff has failed to comply with Rule 7056-2, all material facts in the Debtor's 7056-1 statement are deemed admitted and are set forth in Section III of the instant Memorandum Opinion.

## B.    Objections to Discharge

The discharge provided by the Bankruptcy Code is meant to effectuate the "fresh start" goal of bankruptcy relief. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). In exchange for that fresh start, the Code requires debtors to truthfully and accurately present themselves before the court. *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 359 (Bankr. N.D. Ill. 2002), *aff'd*, No. 02 C 9451, 2003 WL 403138 (N.D. Ill. Feb. 20, 2003). Indeed, a discharge is only for the honest debtor. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991); *McWilliams*, 284 F.3d at 790; *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996); *N. Trust Co. v. Garman (In re Garman)*, 643 F.2d 1252, 1257 (7th Cir. 1980), *cert. denied*, 450 U.S. 910 (1981). However, the denial of discharge is a drastic remedy. *Henbest v. Meyer (In re Meyer)*, 307 B.R. 87, 91 (Bankr. N.D. Ill. 2004). Accordingly, courts may be more reluctant to impose it than to find a particular debt non-dischargeable. *See Soft Sheen Prods., Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) ("The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor.").

Objections to discharge under 11 U.S.C. § 727 must be liberally construed in favor of debtors and strictly against objectors in order to grant debtors a fresh start. *Juzwiak*, 89 F.3d at 427. As the party objecting to the Debtor's discharge, the Plaintiff bears the burden of proving the objection. *See* Fed. R. Bankr. P. 4005; *First Federated Life Ins. Co. v. Martin*

-9-

*(In re Martin)*, 698 F.2d 883, 887 (7th Cir. 1983) (noting that "the *ultimate* burden of proof

in a proceeding objecting to a discharge lies with the plaintiff") (emphasis in original)).

More specifically, the Plaintiff must establish all required elements of the objection by a

preponderance of the evidence. *See Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966-67 (7th

Cir. 1999).


## III. UNDISPUTED FACTS AND BACKGROUND

The following facts are undisputed or, as discussed *supra*, have been deemed

admitted pursuant to Local Bankruptcy Rule 7056-2B. Several years before filing for relief

under the Bankruptcy Code, the Debtor was the sole owner of all shares of Oz's Complete

Auto Service, Inc. ("Oz"), an Illinois corporation operating out of two facilities in the

Chicago suburbs of Forest Park and Berwyn. 7056-1 statement at ¶¶ 1 and 3; Zamudio Aff.

at ¶¶ 2 and 4. In or around 1998, the Plaintiff invested over $100,000.00 in Oz, purchasing

half of the corporation's shares and thereby becoming an equity shareholder.[2]  7056-1

statement at ¶ 2; Zamudio Aff. at ¶ 3; Compl. at ¶ 7. Subsequently, in October 1999, the

Forest Park facility closed, and all equipment was moved to Berwyn. 7056-1 statement at ¶

4; Zamudio Aff. at ¶ 5. By February 2002, all operations had ceased, and the Berwyn facility

was shut down.  7056-1 statement at ¶ 5; Zamudio Aff. at ¶ 6.  Corporate dissolution

---

[2]  The Debtor states that the Plaintiff invested "not less than $125,000" in the
corporation. 7056-1 statement at ¶ 2; Zamudio Aff. at ¶ 3. In contrast, the Plaintiff contends
that he invested more than $157,000.00, in addition to paying over $40,000.00 in back taxes
owed by both the corporation and the Debtor individually. Compl. at ¶ 7.  On Schedule F,
the Debtor lists the Plaintiff as a creditor holding an unsecured nonpriority claim in an
amount "unknown." Petition at Sch. F; Compl. at ¶ 8.  In any event, the extent of the claim
is immaterial to the outcome in the matter before the Court and is, therefore, of no moment.

-10-

proceedings were pending at the time of the bankruptcy filing. *See* Statement of Financial Affairs at 2.

All of the equipment needed to operate the automobile service business--including an alignment machine, five vehicle lifts, two brake lathes, two tire machines, and various pieces of testing equipment and torches--was initially stored in the Debtor's home and later in a storage facility. 7056-1 statement at ¶ 6; Zamudio Aff. at ¶ 7. Subsequently, the Debtor leased space in and moved the equipment to Broadview, Illinois, where he operated a corporation specializing in automotive repair called Broadview Car Care Center ("Broadview"). 7056-1 statement at ¶ 7; Zamudio Aff. at ¶ 8.

Shortly thereafter, things began to unravel for the Debtor. In early 2004, he fell behind on his lease payments for the Broadview facility and was forced to abandon the space, which was subsequently leased to a corporation called American Car Care Center, Inc. ("American Car Care"). 7056-1 statement at ¶¶ 8 and 9; Zamudio Aff. at ¶¶ 9 and 10. Because the Debtor could not afford to either move or store the Oz equipment, he left most of it at the Broadview facility. 7056-1 statement at ¶ 10; Zamudio Aff. at ¶ 11. He did not receive any monetary payment or other valuable consideration in exchange for the assets. 7056-1 statement at ¶ 11; Zamudio Aff. at ¶ 12.

In addition to problems related to the Debtor's business, there was also marital trouble at home. In June 2003, the Debtor vacated the marital residence, located at 1517 Maple Avenue in Downers Grove, Illinois, and eventually was living out of his 1992 Dodge Caravan. 7056-1 statement at ¶¶ 8, 14, 25; Zamudio Aff. at ¶¶ 9, 17, 29; Dahlgren Aff. at ¶ 14; Compl. at ¶ 14. At the same time, he retained attorney Dahlgren to represent him in

-11-

marital dissolution proceedings. Dahlgren Aff. at ¶¶ 2 and 3. About a month later, Dahlgren

prepared a marital settlement agreement ("Settlement Agreement"), which both the Debtor

and his wife subsequently executed.[3] *Id.* at ¶ 4; Pl. Ex. 1, Settlement Agreement. Pursuant

to the Settlement Agreement, the Debtor was to make maintenance payments of $100.00 per

month in exchange for transferring his interest in the marital residence to his wife. Dahlgren

Aff. at ¶ 6; Pl. Ex. 1, Settlement Agreement at 7. Specifically, the Settlement Agreement

provided, in pertinent part, as follows:

> 8.2     The HUSBAND [the Debtor] shall pay the WIFE, as and for her support, the sum of $100 each and every month commencing the first full month following entry of a Judgment in the pending action and continuing for 35 subsequent months (for a total of 36 monthly payments).

> . . .

> 8.4     The support payments may be reviewed on or before September 4, 2006.

> . . .

> 9.3     WIFE shall have exclusive possession of the marital home of the parties and shall make all of the mortgage, real estate tax and homeowner's assessment payments as said payments become due, including all such payments which are now due. WIFE shall indemnify and hold HUSBAND harmless in reference to such payments.

> 9.4     HUSBAND shall quit claim his interest to WIFE and relinquish any equity therein in lieu of additional maintenance.

Pl. Ex. 1, Settlement Agreement at 6 and 7.

---

[3] Although Cynthia Zamudio did not employ counsel but, instead, filed a *pro se* appearance, she "had the benefit of advice, investigation, and recommendations with reference to the subject matter" of the Settlement Agreement. *See* Pl. Ex. 1, Settlement Agreement at 2.

-12-

The marital dissolution case was filed on August 3, 2003. Dahlgren Aff. at ¶ 9. A judgment for dissolution of marriage, which incorporated the Settlement Agreement, was entered about a month later, on September 4, 2003. *Id.* at ¶ 10. At that time, the primary mortgage on the marital home was in default, and a foreclosure suit was filed in October 2004. 7056-1 statement at ¶ 15; Zamudio Aff. at ¶ 18. The principal balance of three mortgages on the property totaled approximately $195,000.00. *Id.* Cynthia Zamudio ultimately sold the residence for about $260,000.00 and retained all proceeds from the sale. 7056-2 statement at ¶ 18; Zamudio Aff. at ¶ 21.

In January 2004, the Dodge Caravan in which the Debtor was living was stolen.[4] 7056-1 statement at ¶ 12(F); Zamudio Aff. at ¶ 15 and Police Report. The vehicle contained all of the Debtor's business and personal records. 7056-1 statement at ¶ 12(F); Zamudio Aff. at ¶ 15.

On February 11, 2004, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On Schedule F, he listed the Plaintiff as a creditor holding an unsecured nonpriority claim in an "unknown" amount. Petition at Sch. F; Compl. at ¶ 8. Although not included on the face of the petition itself, Schedule H indicates that Cynthia Zamudio, Broadview, and Oz are codebtors also liable for debts listed by the Debtor in the Schedules of Creditors. Petition at Sch. H.

---

[4] Schedule B indicates that the Debtor owns the 1992 Dodge Caravan. That is undoubtedly because the Debtor executed the petition on January 22, 2004, just one day before the vehicle was stolen. *See* Zamudio Aff., Police Report. The petition itself was not actually filed until February 11, 2004.

-13-

On June 1, 2004, the Plaintiff filed a complaint objecting to the Debtor's discharge pursuant to §§ 727(a)(2) and (a)(5). In Count I, the Plaintiff contends that the Debtor transferred the marital home to his former spouse with the intent to hinder, delay, and defraud the Plaintiff, the other creditors of the estate, and the trustee, thereby violating § 727(a)(2). Count II alleges that the Debtor is unable to satisfactorily explain the loss or deficiency of a variety of assets, including the marital residence, all in violation of § 727(a)(5). On October 19, 2004, the Debtor filed an answer, asserting three affirmative defenses to Count I and four affirmative defenses to Count II.[5]

On May 13, 2005, the Debtor filed the instant motion for summary judgment. In short, the Debtor contends that he transferred the marital home to his former wife pursuant to the Settlement Agreement, in lieu of having to pay additional maintenance, and not with the intent to hinder, delay, and defraud creditors. The Debtor also insists that he has

---

[5] The three affirmative defenses to Count I are, briefly, as follows:

(1) The Settlement Agreement expressly provides that the marital home was conveyed in exchange for and "in lieu of additional maintenance."

(2) The Debtor was granted a substantial reduction in his maintenance and child support obligations by transferring the marital home.

(3) The purpose of the transfer was to obtain substantial reduction in the amount of alimony and child support to be paid and to provide stability for the Debtor's two children. See Oct. 19, 2004 Answer at 4-5.

The four affirmative defenses to Count II are, in sum, as follows:

(1) The transfer of the marital home was fully disclosed at the 341 meeting of creditors.

(2) The corporate assets sold for an inadequate amount of consideration were never assets of the bankruptcy estate, and, thus, the Debtor need not explain their loss.

(3) The corporate assets were used to pay secured claims, they were surrendered to secured creditors of the corporation, or proceeds were used to pay corporate debt.

(4) The Debtor is unable to explain "any other loss or deficiency of assets discovered during this proceeding" because the assets to which the Plaintiff refers are not sufficiently described.

See id. at 6.

-14-

satisfactorily explained the loss or dissipation of the assets of the bankruptcy estate. In

response, the Plaintiff contends that his discovery has not yet been completed and denies that

the facts are undisputed, thus precluding the Court from granting the Debtor's motion for

summary judgment.

## IV. DISCUSSION

Section 727(a) of the Code denies a discharge to debtors who have been unscrupulous

in various ways. *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 740 (Bankr. N.D. Ill. 2004).

The Plaintiff argues that the Debtor is not entitled to a discharge under § 727(a) for two

principal reasons. The Court will address each one in turn.

### A.    11 U.S.C. § 727(a)(2)(A)

First, the Plaintiff contends that the Debtor, with the intent to hinder, delay, and

defraud the Plaintiff, the other creditors of the estate, and the trustee, transferred the marital

home to his former wife. Compl. at ¶¶ 16 and 17. Strictly prohibiting such conduct, §

727(a)(2)(A) provides as follows:

> (a)    The court shall grant the debtor a discharge, unless–
>
>             . . .
>
> (2)    the debtor, with intent to hinder, delay, or defraud a creditor
>         or an officer of the estate charged with custody of property
>         under this title, has transferred, removed, destroyed,
>         mutilated, or concealed, or has permitted to be transferred,
>         removed, destroyed, mutilated, or concealed–
>
> (A)    property of the debtor, within one year before the date
>         of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A).

-15-

Under § 727(a)(2)(A), an objection to discharge will be sustained if the objecting party alleges and establishes the following: (1) the debtor transferred, removed, destroyed, mutilated, or concealed property; (2) belonging to the estate; (3) within one year of filing the bankruptcy petition; (4) with the intent to hinder, delay, or defraud a creditor of the estate. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd*, 540 U.S. 443 (2004); *Saluja v. Mantra (In re Mantra)*, 314 B.R. 723, 729 (Bankr. N.D. Ill. 2004); *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003). An exception to discharge pursuant to § 727(a)(2)(A) "essentially 'consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor).'" *Kontrick*, 295 F.3d at 736 (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)); *see also Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein)*, 299 B.R. 211, 226-27 (Bankr. N.D. Ill. 2003), *aff'd*, No. 03 C 8023, 2004 WL 2075442 (N.D. Ill. Aug. 31, 2004). Both elements must have been present during the year before bankruptcy; anything earlier is "forgiven." *Kontrick*, 295 F.3d at 736.

In the case at bar, the parties do not dispute that the Debtor transferred his interest in the marital residence to his former wife, that the home constituted property of the estate, or that the transfer took place within one year of filing the petition. Rather, the issue in the instant matter is whether the Debtor had the requisite fraudulent intent under § 727(a)(2)(A). Specifically, the Plaintiff maintains that the transaction "reek[s] of fraudulent intent" and that if permitted to complete discovery, he will be able to prove that the transfer was a "sham transaction" designed to enable the Debtor to avoid his creditors. Response at 9-10.

-16-

The issue of a debtor's intent is a question of fact to be decided by the bankruptcy judge. *Smiley v. First Nat'l Bank of Belleville (In re Smiley)*, 864 F.2d 562, 566 (7th Cir. 1989). Denial of discharge under this section requires proof of actual intent to hinder, delay, or defraud a creditor. *McWilliams*, 284 F.3d at 790; *In re Snyder*, 152 F.3d 596, 601 (7th Cir. 1998); *In re Krehl*, 86 F.3d 737, 743 (7th Cir. 1996); *Smiley*, 864 F.2d at 566. Because debtors seldom admit that their intent was fraudulent, actual intent to hinder, delay, or defraud may be established by circumstantial evidence or by inference drawn from a debtor's course of conduct. *McWilliams*, 284 F.3d at 791, *Snyder*, 152 F.3d at 601; *Krehl*, 86 F.3d at 743; *Smiley*, 864 F.2d at 566.

"In determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's 'whole pattern of conduct.'" *Bennett & Kahnweiler Assocs. v. Ratner (In re Ratner)*, 132 B.R. 728, 731 (N.D. Ill. 1991) (*quoting First Tex. Savs. Ass'n v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir. 1983)); *see also Costello*, 299 B.R. at 895 (noting that courts can deduce fraudulent intent by examining the totality of facts and circumstances surrounding the transaction). The Seventh Circuit has adopted several factors which, if shown, indicate actual fraud: (1) the lack or inadequacy of consideration; (2) the family, friendship, or close relationship between the transferor and transferee; (3) the retention of possession, benefit, or use of the property at issue; (4) the financial condition of the debtor; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the chronology of the events and transactions at issue. *McWilliams*, 284 F.3d at 791.

·17·

The Plaintiff points to three of these badges of fraud which, he argues, establishes the

Debtor's intent to defraud his creditors. First, the Plaintiff notes that the transfer of the

marital residence was made to the Debtor's ex-wife, who is "clearly a family member."

Response at 6. Second, the Plaintiff claims that the transfer was effectuated gratuitously or

for less than adequate consideration. Finally, the Plaintiff contends that the marital home

was the only asset that the Debtor owned of any material value and that, accordingly, its

transfer rendered the Debtor insolvent.

The Plaintiff is quite right in noting that property transferred by a debtor to a family

member is relevant.[6] *Costello*, 299 B.R. at 896; *Cmty. Bank of Homewood-Flossmoor v.*

*Bailey (In re Bailey)*, 145 B.R. 919, 927 (Bankr. N.D. Ill. 1992). Although a transfer to a

relative is not in and of itself sufficient to lead a court to find fraud, such a transfer, when

combined with other circumstances, can support a finding of fraud. *Id.* Specifically, the

transfer of property to a debtor's spouse while insolvent is a "classic" badge of fraud. *Rogers*

*v. Boba (In re Boba)*, 280 B.R. 430, 435 (Bankr. N.D. Ill. 2002). "[A]n agreed transfer of

property to a spouse through a fast-track divorce on the eve of bankruptcy is evidence of a

fraudulent scheme to put the property beyond reach of creditors." *Id. (citing Fogel v. Chevrie*

---

[6] It is arguable that Cynthia Zamudio is not considered a family member for purposes of inferring fraud because she was–or was soon to be–the Debtor's ex-wife. However, the Debtor's two children who also benefitted by the award of the marital home to the Debtor's former wife are "family." *See, e.g., Conti-Commodity Servs., Inc. v. Clausen (In re Clausen)*, 44 B.R. 41, 45 (Bankr. D. Minn. 1984). Further, the Debtor has not argued that Cynthia Zamudio is not a family member, and it is not the Court's responsibility to raise the argument for him. Thus, the Court will consider the subject transfer from the Debtor to Cynthia Zamudio to be a transfer to a family member.

-18-

*(In re Chevrie)*, Nos. 99-B-6542, Adv.-00-A-38, 2001 WL 120132, at *10 (Bankr. N.D. Ill. Feb. 13, 2001)).

In this matter, neither the evidence of record nor the totality of the circumstances suggests that the Debtor's marital dissolution from Cynthia Zamudio was a fast-track divorce or that there was any collusion or fraudulent scheme devised by the two in order to put the marital home beyond the reach of the Plaintiff or other creditors. The Debtor contacted Dahlgren on June 16, 2003 and subsequently retained her to represent him. Dahlgren Aff. at ¶¶ 2 and 3. It was not until July 15, 2003, twenty-nine days later, that the Settlement Agreement was reached. *Id.* at ¶ 4. On July 22, 2003, Cynthia Zamudio executed the Settlement Agreement, and six days later the Debtor signed it. *Id.*; Pl. Ex. 1, Settlement Agreement. The marital dissolution case was not filed until August 3, 2003. Dahlfren Aff. at ¶ 9. Over three weeks later, on August 25, 2003, a prove-up hearing took place, and a judgment for dissolution of marriage was entered on September 4, 2003. *Id.* at ¶ 10. The Debtor did not file a bankruptcy petition until February 11, 2004, almost eight months after he first contacted Dahlgren and more than five months after the marriage dissolution judgment was entered. The mere timing of the critical events in the matter at bar belie the suggestion that the marital dissolution was a "fast-track" divorce. *Cf. Boba*, 280 B.R. at 432-33 (finding fast-track divorce where debtor filed for marital dissolution on September 13, 2001; obtained judgment for dissolution of marriage on September 26, 2001; executed quit claim deed to ex-wife on October 1, 2001; and filed bankruptcy petition on January 7, 2002); *Chevrie*, 2001 WL 120132, at *3-4 (noting that debtor filed Chapter 7 petition just one month after judgment of marital dissolution entered); *Citibank, N.A. v. Williams (In re*

-19-

*Williams)*, 159 B.R. 648, 657-60 (Bankr. D.R.I. 1993) (finding that debtor engaged matrimonial counsel on October 10, 1990, obtained a divorce, and then filed for bankruptcy less than two months later).

More importantly, there is simply no evidence in this record to establish that the divorce was in any way a spurious dissolution between the Debtor and Cynthia Zamudio, that either of the parties acted in a collusive fashion, or that the transfer of the marital residence was a "sham" transaction executed to allow the Debtor to avoid his creditors. Rather, the evidence indicates that the transfer was made in lieu of additional maintenance obligations to be paid by the Debtor to Cynthia Zamudio in anticipation of the parties' martial dissolution. The Debtor had permanently vacated the marital home by June 2003, Dahlgren Aff. at ¶¶ 6 and 14, and had stopped paying the mortgage, taxes, and maintenance on the property. Further, there is no evidence that the Debtor ever discussed the issue of bankruptcy during the relevant time period, either with his attorney or with Cynthia Zamudio. In fact, Dahlgren expressly states in her affidavit that at no time did she ever advise the Debtor to file for bankruptcy relief and that at no time did the Debtor ever assert that he wanted to transfer his interest in the property to hinder, delay, or defraud his creditors. *Id.* at ¶¶ 11 and 12. Moreover, the transfer was not effectuated with either secrecy or dispatch. Rather, it was fully disclosed on the Debtor's schedules and was apparently known to all concerned. In short, there are simply no indicia that the marital dissolution between the Debtor and his former spouse was a collusive effort to shield the Debtor's marital property from his

·20·

creditors.[7]  *Cf. Boba*, 280 B.R. at 432-35 (finding debtor's property transfers to spouse collusive, where debtor continued to enjoy beneficial use of transferred assets and failed to schedule either the transfers or his ownership in a corporation); *Chevrie*, 2001 WL 120132, at \*7 (concluding that debtor's divorce from wife was collusive, where wife was not represented by an attorney in divorce proceedings and the parties remained friends and continued to live in same residence); *Williams*, 159 B.R. at 662 (finding fraudulent transfer where debtor secretly obtained divorce while continuing to negotiate with creditor and then, when creditor demanded payment in full, filed a Chapter 11 petition); *Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 661-62 (Bankr. E.D.N.Y. 1993) (denying discharge where debtor transferred interest in marital home to wife for no consideration; never permanently moved out of home; continued paying mortgage, taxes, and maintenance on property; and filed joint tax returns with wife showing mortgage interest deductions); *Moore v. Pedigo (In re Pedigo)*, 106 B.R. 279, 283 (Bankr. M.D. Fla. 1989) (finding that debtor transferred property to spouse with intent to defraud creditors, where no conveyances were supported

---

[7]  The Plaintiff goes to great lengths to challenge the Debtor's reliance on the Settlement Agreement. Specifically, the Plaintiff argues that the Debtor voluntarily entered into the Settlement Agreement. While this point is accurate, the Plaintiff's unsubstantiated suggestion that there was collusion between the Debtor and his former spouse merely because the Debtor voluntarily executed a settlement agreement with her requires a leap of faith that this Court refuses to make. Moreover, the Plaintiff's allegation of collusion is a thinly veiled collateral attack on the Settlement Agreement which was incorporated by reference in the subsequent judgment for dissolution entered by the state court. The *Rooker-Feldman* doctrine precludes challenge by way of collateral attack on that final judgment here. *See TruServ Corp. v. Flegles, Inc.*, No. 04-3819, 2005 WL 1924200, at \*3-4 (7th Cir. Aug. 12, 2005); *Homer-Radtke v. Associated Mortgage, Inc. (In re Homer-Radtke)*, 305 B.R. 846, 849-50 (Bankr. N.D. Ill. 2004). The Plaintiff also questions whether Cynthia Zamudio "deserved" maintenance payments to begin with, as well as the amount of the payments, issues over which the Plaintiff himself acknowledges this Court has no jurisdiction.

by consideration, purchases were falsely notarized, and transfers purportedly made in connection with divorce occurred several years before divorce action began).

Turning to the other badges of fraud, the Plaintiff's contention that the transfer of the Debtor's interest in the property was effectuated gratuitously or for less than adequate consideration is erroneous. The Plaintiff's claim seems to rely on the language of the quit claim deed, which notes that the transfer was made "in consideration of $10.00 and other consideration . . . ." However, as the Debtor notes quite rightly, the words of the quit claim deed can be accurately described as boilerplate language. Moreover, the deed expressly refers to "other consideration," in addition to "consideration of $10.00." In the instant matter, there was indeed "other consideration" provided in exchange for the transfer of the marital property. Specifically, under the Settlement Agreement, the Debtor vacated the marital home and relinquished his interest in the property in lieu of paying additional maintenance over and above the $100.00 monthly figure to which the parties agreed. Dahlgren Aff. at ¶ 6; Pl. Ex. 1, Settlement Agreement at §§ 8.2 and 9.4  Further, Cynthia Zamudio agreed not to seek an increase in the maintenance payment for a period of thirty-six months and promised to hold harmless and indemnify the Debtor from and against any claim arising out of the marital property, including mortgages, liens, real estate taxes, insurance, and any arrears due on mortgages. Dahlgren Aff. at ¶¶ 6 and 7; Pl. Ex. 1, Settlement Agreement at §§ 8.4, 9.3, and 9.4. Finally, the Debtor asserted that the transfer was made to provide stability for his two minor children, allowing them to continue to live in the home until it was sold. Zamudio Aff. at ¶ 25.

-22-

With respect to the final badge of fraud--the Debtor's financial condition--the parties

do not dispute that the marital residence was the only appreciable asset of the parties, nor that

the Debtor's transfer of his interest in the property rendered him insolvent. However, this

fact, standing alone, does not establish that the Debtor transferred the marital home with the

intent to defraud his creditors. *See, e.g., Leibowitz v. Imsorn*, Nos. 02 C 4465, 02 C 4466,

2003 WL 21785620, at *2 (N.D. Ill. Aug. 1, 2003) (noting that the presence of a single badge

of fraud is not sufficient to establish actual fraudulent intent). Rather, based on the totality

of the circumstances in the limited record presented by the parties, the Court finds that the

Plaintiff has failed to prove by a preponderance of the evidence that the Debtor intended to

hinder, delay, or defraud the Plaintiff, the other creditors of the estate, or the trustee.

Accordingly, § 727(a)(2) cannot serve as a basis for denial of discharge in this matter.

The Court turns, finally, to the Plaintiff's contention that his discovery is pending and

that, given the opportunity to complete discovery, he will be able to expose the Settlement

Agreement for what it really is--"a sham transaction" designed to allow the Debtor to avoid

his creditors. In fact, the Plaintiff contends that he has secured an "expert witness" to

support this contention if the matter proceeds to trial. The Plaintiff is mistaken.

Pursuant to Federal Rule of Civil Procedure 56(b), made applicable to this proceeding

by Federal Rule of Bankruptcy Procedure 7056, "[a] party against whom a claim . . . is

asserted . . . may, *at any time*, move . . . for summary judgment . . . ." Fed. R. Civ. P. 56(b)

(emphasis added). Thus, the Debtor was perfectly within his right to move for summary

judgment on May 13, 2005. Moreover, the Debtor filed his motion almost one full year after

the Plaintiff filed this adversary proceeding, giving the Plaintiff over eleven months to

-23-

conduct discovery. The Debtor's memorandum in support of the instant motion asserts that

the Plaintiff has proffered no discovery to the Debtor, although the Plaintiff has responded

to defense interrogatories and document production requests. Thus, the Plaintiff, who has

the ultimate burden of proof, has not taken his own discovery but has "sat" on his complaint;

he may not now use that inaction as a tactical ploy to defeat the motion at bar. Finally, if the

Plaintiff does indeed have a witness who can attest to the fact that the property transfer was

"a sham transaction," it is wholly unclear to the Court why the Plaintiff failed to submit an

affidavit from that witness.   Summary judgment "is the 'put up or shut up' moment in a

lawsuit, when a party must show what evidence it has that would convince a trier of fact to

accept its version of events." *Schacht v. Wis. Dep't of Corrs.*, 175 F.3d 497, 503-04 (7th Cir.

1999), *overruled on other grounds by Higgins v. Miss.*, 217 F.3d 951 (7th Cir. 2000). The

Plaintiff has failed to present such evidence. Thus, judgment will be entered in the Debtor's

favor on Count I of the complaint.

**B.     11 U.S.C. § 727(a)(5)**

Next, the Plaintiff contends that the Debtor is unable to satisfactorily explain the loss

or deficiency of his various assets. Section 727(a)(5) bars a debtor's discharge for the failure

to explain any dissipation of assets and provides in pertinent part as follows:

(a)     The court shall grant the debtor a discharge, unless–

. . .

(5)     The debtor has failed to explain satisfactorily . . . any loss of
assets or deficiency of assets to meet the debtor's
liabilities[.]

-24-

11 U.S.C. § 727(a)(5). The inquiry under § 727(a)(5) is not limited to transactions or events

within a specified number of months or years before the bankruptcy filing. *PNC Bank v.

Buzzelli (In re Buzzelli)*, 246 B.R. 75, 117 (Bankr. W.D. Pa. 2000). Although § 727(a)(5)

prescribes no limitations period, the assets in question must have belonged to the debtor

during a period not remote in time to the commencement of the case. *Olbur*, 314 B.R. at

741. A focus on the two years prior to the bankruptcy filing is common. *See, e.g., Martin*,

698 F.2d at 886; *Baum v. Earl Millikin, Inc. (In re Baum)*, 359 F.2d 811, 813 (7th Cir. 1966);

*First Commercial Fin. Group, Inc. v. Hermanson (In re Hermanson)*, 273 B.R. 538, 552

(Bankr. N.D. Ill. 2002). Nevertheless, inquiries beyond the two-year period may sometimes

be warranted. *See, e.g., In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996) (expanding the

focus to nine years pre-petition). The exact time that a court should look back depends on

the case; there is no hard and fast rule. *Olbur*, 314 B.R. at 741.

"Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline

to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage,

loss, or disappearance of assets." *Martin*, 698 F.2d at 886. "By penalizing a debtor who is

insufficiently forthcoming about what happened to his assets, section 727(a)(5) is one of

several Code provisions meant to relieve creditors and courts of the full burden of

reconstructing the debtor's financial history and condition, placing it instead upon the

debtor." *Olbur*, 314 B.R. at 740 (internal quotation omitted). Courts are not concerned with

the propriety of a debtor's disposition of assets but, rather, focus on the truth, detail, and

completeness of the debtor's explanation of the loss. *D'Agnese*, 86 F.3d at 735. A debtor

·25·

"cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation." *Martin*, 698 F.2d at 888.

There are two stages of proof under § 727(a)(5). *Olbur*, 314 B.R. at 740; *Mantra*, 314 B.R. at 730; *Bostrom*, 286 B.R. at 364; *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 955 (Bankr. N.D. Ill. 1995). First, the party objecting to discharge bears the burden of establishing that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors. *Id.* If the party objecting to the discharge is able to satisfy that burden, then the debtor must provide a satisfactory explanation for the loss. *Id.*

What constitutes a "satisfactory" explanation for purposes of § 727(a)(5) is left to the discretion of the court. *Baum*, 359 F.2d at 814; *Olson v. Potter (In re Potter)*, 88 B.R. 843, 849 (Bankr. N.D. Ill. 1988) (*citing Baum*). A debtor's explanation "must consist of more than [a] vague, indefinite, and uncorroborated hodgepodge of financial transactions . . . ." *Baum*, 359 F.2d at 814. "Instead it must be a good faith explanation of what really happened to the assets in question." *Potter*, 88 B.R. at 89. "To be satisfactory, the explanation must demonstrate [that] the debtor has exhibited good faith in conducting his affairs and explaining the loss of assets." *Bay State Milling Co. v. Martin (In re Martin)*, 141 B.R. 986, 999 (Bankr. N.D. Ill. 1992). Although the explanation need not be comprehensive, it must meet two criteria to be deemed "satisfactory." *Mantra*, 314 B.R. at 730; *Costello*, 299 B.R. at 901; *Bostrom*, 286 B.R. at 364; *Bryson*, 187 B.R. at 956. First, it must be supported by at least some documentation. *Id.* Second, this documentation must be sufficient to eliminate

-26-

the need for the court to speculate as to what happened to all of the assets. *Mantra*, 314 B.R. at 730; *Costello*, 299 B.R. at 901; *Bostrom*, 286 B.R. at 364-65; *Bryson*, 187 B.R. at 956.

Although a satisfactory explanation must be convincing, the focus of the inquiry is not solely on the subjective nature or honesty of the debtor's explanation, but is also on the objective adequacy of such explanation. *See D'Agnese*, 86 F.3d at 735. Furthermore, a debtor's failure to satisfactorily justify a substantial loss of assets need not be the product of fraudulent intent. *Mantra*, 314 B.R. at 730. An objecting party must prevail on two issues, however: the disappearance of substantial assets and the lack of a satisfactory explanation for the disappearance. *Id.*; *Hermanson*, 273 B.R. at 546.

The first question, then, is whether the Plaintiff has established that the Debtor at one time owned substantial and identifiable assets that are no longer available to his creditors. Specifically, the Plaintiff contends that the Debtor is unable to adequately explain the loss or deficiency of assets with respect to the following: (1) the transfer of the marital home and "other property" to his former spouse; (2) the sale of "certain corporate assets, including machinery and equipment"; (3) the liquidation of "certain assets" without proper disclosure; and (4) "[a]ny other loss or deficiency of assets discovered during this proceeding." Compl. at ¶ 20. Neither the Plaintiff's complaint nor his response to the Debtor's motion for summary judgment identifies the assets at issue more precisely than as stated above. This lack of specificity foils the Plaintiff right out of the gate. It is only the Debtor's pleadings and attached exhibits that clarify the assets about which the Plaintiff allegedly seeks an explanation.

-27-

With respect to the assets transferred to the Debtor's ex-wife, the Plaintiff has at least established the loss of a substantial asset: there is no dispute that the Debtor no longer owns his interest in the marital residence. The Debtor, however, has given a satisfactory explanation for the loss. As discussed *supra*, the Debtor transferred the marital home in exchange for a reduced maintenance payment, as well as Cynthia Zamudio's promise to hold harmless and indemnify the Debtor from and against any claims arising out of the house, all of which is documented by the Settlement Agreement. The Court need not speculate about what happened to this asset.

The alleged "other property" transferred to the Debtor's former wife appears to consist of a life insurance policy and two handguns. *See* 7056-1 statement at ¶ 38. The Plaintiff admitted in his deposition testimony, however, that he was aware of what happened to these assets. Specifically, he stated that he knew that the Debtor had given these items to his former spouse, that she sold the insurance policy, and that she either still has the guns or sold them as well. Pl. Dep. at 31-35. In short, the location of these assets is no secret to the Plaintiff. Moreover, it is unclear whether the insurance policy and firearms are sufficiently "substantial" to satisfy § 727(a)(5). *See Olbur*, 314 B.R. at 742 n.4. The only evidence of record regarding the value of these assets is the unsubstantiated and dubious statement of the Plaintiff that one of the guns "was a valued piece of equipment," Pl. Dep. at 34; there is no evidence to establish the value of the insurance policy.

As to the Oz assets, the Debtor contends that he need not explain their loss or dissipation because they belonged to the corporation and were, therefore, not assets of the bankruptcy estate. The Debtor is quite right that corporate assets cannot become part of the

-28-

bankruptcy estate of the debtor shareholder. *Fowler v. Shadel*, 400 F.3d 1016, 1019 (7th Cir.

2005). Rather, under Illinois corporate law, a corporation's assets upon dissolution belong

to its shareholders, subject to the rights of creditors and the legal claims of third parties.

*Cole Taylor Bank v. Ratner (In re Ratner)*, 146 B.R. 211, 218 (Bankr. N.D. Ill. 1992). In this

matter, however, the Debtor has included Oz on Schedule H as a codebtor also liable for

debts listed in the Schedules of Creditors.   Accordingly, he must provide a satisfactory

explanation of any deficiency of the Oz assets, once the Plaintiff has sufficiently identified

them.

With respect to these assets, the Plaintiff refers only to "certain corporate assets,

including machinery and equipment" and "[t]he liquidation of certain assets without proper

disclosure." Proffering solely these imprecise and uncertain descriptions, the Plaintiff has

failed to meet his burden of establishing the disappearance of substantial and identifiable

assets.[8] Instead, it is the Debtor who identifies, with substantial detail, the corporate assets

in question, which consist of five motor vehicles of various makes and years, five vehicle

lifts, two brake lathes, one wheel balancer, two tire machines, "all data vehicle repair

information," a computer, "misc[ellaneous] tools and equipment," and two lease deposits.

*See* Elliott Dep., Ex. 2, "List of Assets."

The evidence concerning the Debtor's motor vehicles, which, he asserts were not

corporate property but, instead, owned personally by him, shows a deficiency in assets too

remote to support a § 727(a)(5) claim.  That is, all of the vehicles were either sold or given

---

[8] Similarly, the Plaintiff's mere reference to "[a]ny other loss or deficiency of assets
discovered during this proceeding" is wholly insufficient for purposes of § 727(a)(5).

-29-

away between 1999 and 2002. Zamudio Aff. at ¶ 13. Nevertheless, the Debtor indicates in

his affidavit how each vehicle was disposed of, when, and to whom. *Id.* The Debtor

similarly accounts for the machinery and equipment, explaining that these assets were either

abandoned to American Car Care, sold to a Firestone dealer located in Chicago, or left on

the premises in Broadview. *Id.* at ¶ 14.

The absence of records supporting these dispositions is not fatal to the Debtor's

explanation. "Notwithstanding bankruptcy court decisions suggesting otherwise, a debtor's

explanation for the loss of assets can be satisfactory even without records corroborating the

loss." *Schechter v. Hansen (In re Hansen)*, 325 B.R. 746, 765 n.13 (Bankr. N.D. Ill. 2005)

(citations omitted) (*citing Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824, 840 (Bankr.

N.D. Ohio 2004); *Olbur*, 314 B.R. at 741-42)). The lack of documentation is always

relevant, however, to the credibility of the explanation. *Id.*

In the matter at bar, the Debtor, himself, has come forward with a detailed list of the

assets at issue, notwithstanding the fact that identifying those assets was the Plaintiff's

responsibility. The Debtor has also been sufficiently forthcoming about what happened to

those assets. Although he is not able to produce corroborative documentation in support of

the dispositions, he provides a credible explanation for the lack of records: the 1992 Dodge

Caravan, out of which he was ultimately living and which contained all of his personal and

business records, was stolen in January 2004. A police report documenting the theft supports

the Debtor's contention.

·30·

Moreover, the Plaintiff has admitted that he knows where the corporate assets are. *See* Pl. Dep. at 25-30. In fact, he expressly states in his deposition that he seeks not an explanation as to the location of the assets, but an accounting to the corporation:

> Q    So your position is it's not that [the Debtor] can't explain what happened to [the corporate] assets; he hasn't accounted to the corporation for the proceeds of the assets?
>
> A    Correct.

*Id.* at 27. Thus, the Plaintiff objects not to the adequacy of the Debtor's explanation of the dissipation of the assets but to the way in which he disposed of the assets.[9]

The Court does not take issue with the wisdom, or lack thereof, of the Debtor's dissipation of the assets. Rather, the Court is concerned solely with the sufficiency of the Debtor's explanation for the loss of those assets. Because the Plaintiff has failed to satisfy his burden of proving that the Debtor owned substantial and identifiable assets–other than the marital home–and the Debtor has provided a good faith explanation for the loss of both the marital residence and the assets that the Debtor himself has identified, judgment will be entered in the Debtor's favor on Count II of the complaint.

## V.  CONCLUSION

For the foregoing reasons, the Court grants the Debtor's motion for summary judgment on both Counts I and II and dismisses the Plaintiff's complaint.

---

[9]  The Debtor claims that he abandoned or gave away most of the corporate assets. *See* 7056-1 statement at ¶ 13. The Plaintiff contends that the Debtor sold those assets and received payment for them. *See* Pl. Dep. at 25-26.

-31-

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: _9/23/5_

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### Raymond Elliott v. Oscar Zamudio
### Adversary No. 04 A 02922

Eric G. Zelazny, Esq.
401 W. Lockport Street
Plainfield, IL 60544

Richard L. Hirsh, Esq.
Richard L. Hirsh & Associates
15 Spinning Wheel Road, Suite 128
Hinsdale, IL 60521-2984

David E. Grochocinski, Esq.
Grochocinski Grochocinski & Lloyd,
Ltd.
800 Ravinia Place
Orland Park, IL 60462

Ira Bodenstein, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606

AO 72A
(Rev. 8/82)